These were three cases of appeals from decisions of the General Court. The appellant, who are inspectors of tobacco at Johnson’s, Trent’s, and Manchester warehouses, had, in the settlement of their accounts with the auditor* *215 charged the Commonwealth with the hire of the number of labourers which had, at their respective warehouses, been allowed by the County Court of Chesterfield, at one hundred dollars each, and retained the amount out of the surplus on tobacco exported. The charge was disallowed by the auditor, from whose decision an appeal was taken to the General Court, where the claim was also disallowed, and judgment rendered in favour of the Commonwealth for the full amount of the monies in the hands of the inspectors. From these judgments appeals were taken to this Court.
Wickham, for the appellants. The sole question is, whether inspectors of tobacco are allowed to retain any money for the services of hands which they are required to keep by the County Courts. The order of Court on which these charges are made expressly directs that four labourers shall in future be kept at each of those warehouses ; and the law is explicit in authoris-ing the Courts to make such direction. Rev. Code, vol. 1, c. 13S, s. 16, p. 259. “And the inspectors, at each of the warehouses established by this act, shall constantly keep so many able hands, at their respective warehouses, as the Courts of the several Counties wherein they lie, shall from time to time judge necessary and direct, for the purpose of taking care of all tobacco brought to such warehouse, and stowing it away after the same shall be inspected, and stamped.” Under this clause of the law, the Court *of Chesterfield County directed that four hands should be kept at each of those warehouses for the purpose pointed out by this act. By the 25th section of the same law, (page 262,) all inspectors are directed to account for, upon oath, and pay into the public treasury “all monies received by them, by virtue of their offices, except the money paid for nails, and for their trouble in prizing, or for repacking damaged tobacco, which shall be relanded at their inspections, for every hogshead of transfer tobacco; in which account they shall be allowed their salaries, the rents of the warehouses, and all other necessary disbursements in pursuance of this act.” At the session of 3805 an act passed(a) which makes it the duty of every inspector, under severe penalties, to stow away and secure at night every hogshead of tobacco inspected during the day. This duty cannot be performed without a sufficient number of labourers; and, in these cases, the Court having directed the number of labourers pursuant to law, their wages are to be considered as necessary disbursements, and the inspectors are clearly entitled to retain for the amount.
The Attorney General, for the Commonwealth, observed that this was the first instance in which a claim had been made by inspectors of tobacco for compensation on account of the hire of labourers; and that circumstance alone furnished a strong ground to believe that the allowance was never contemplated by the Legislature. He took a comprehensive view of the several sections of the act of 1792, (b) from which he argued, that, these sections prescribing a general duty to inspectors, and providing a general compensation, no other could be given, unless expressly allowed by law. All incidental expenses must be presumed to have been included.
That part of the 16th section which directs, that the inspectors shall keep so many hands as the County Courts may direct, was inserted merely by way of precaution to guard against the possibility of their not keeping a sufficient number to do the public business. But if it had been the intention of the Legislature to make compensation for those hands out of the public treasury, they would have prescribed the amount of the compensation. This has been done in every other part of the law where a compensation was intended to he given. It is observable too that the Legislature is particularly guarded in designating those cases *in which the State shall be liable; thereby manifestly intending to exclude all others.
The 25th section, it is admitted, directs that the inspectors shall be credited by .the rents of the warehouses, nails, &c. and all other necessary disbursements; but these disbursements must relate to the mere incidental expenses of stationary and other items of an inconsiderable amount. It never can be imagined that the Legislature would particularly mention nails as an article for which the inspectors should be entitled to a credit, and omit such an important item as the hire of labourers. Again: if they had intended that an allowance should be made for labourers, they certainly would have stated the amount, and not have left it to the arbitrary discretion of the inspectors. Suppose an inspector should charge 2 or 300 dollars for a hand, how could the auditor settle the account? It would be impracticable. He cannot settle accounts according to equitable principles, but must be guided by positive law.
Wickham, in reply. This case lies within a very narrow compass. The only inquiry is whether the expense of employing those hands is to be paid by the inspectors, out of their own money, or be chargeable to the Commonwealth under the general provisions of the law concerning disbursements. Is not the labour of hands as much a disbursement as stationary, &c. and as necessary a disbursement? We are consequently to be allowed for their hire in the settlement of our accounts with the treasurer, unless some other clause of the law can be found prescribing a different mode. The law being imperative, that the inspectors shall keep a certain number of hands, it follows of course that they shall be paid for them.
Tuesday, November 10. The Judges delivered their opinions.
JUDGE) TUCKER.
The only question in these cases, is, whether inspectors of tobacco have by law a right to charge the Commonwealth for the hire of labourers employed by them in the warehouses, JE">r the purpose of taking care of and stowing away tobacco brought there to be inspected, pursuant to orders of Chesterfield Court, made under the 16th section of the tobacco law; edit. 1794, c. 135, which directs, “that the inspectors shall constantly keep so *216 many *able hands at their respective warehouses, as the Courts of the Counties wherein they lie, shall judge necessary, and direct, for the purpose of taking care of all tobacco brought' there, and stowing it away after it shall be inspected and stampt;” or whether the recompense for the labour of the hands so employed is supposed to be comprehended under the inspector’s salaries.
By the act of 1764, c. 4, s. 49, edit. 1769, for the better detecting inspectors who shall not do their duty, any two Justices of the County are empowered to visit the public warehouses in their County, and if they should discover any negligence in the inspectors, either in securing the tobacco, or stowing the same away; or that they do not keep a sufficient number of hands for dispatching the business, or do not attend, &c. or are guilty of any other breach of their duty, the Justices shall certify the Governor and Council thereof, and, if any inspector .shall be adjudged guilty of a breach of duty, he shall be removed from his office and incapacitated. Here then it appears that it was the inspector’s duty, forty years ago, and upwards, to keep a sufficient number of hands to perform the very duty, which it is now contended is an additional one, under the acts of 1796, c. 12, and 180S, c. 70. No allowance for those hands was made by that act. Two years after, 1766, c. 14, s. 16, ed. 1769, directs that the several Courts of the Counties therein mentioned, of which Chesterfield is one, shall annually limit and direct what number of hands shall be kept by the inspectors, as well for turning up, opening, and securing all tobacco brought to their warehouse, as to discharge the other business required to be done by such inspectors, and that the inspectors shall constantly keep the number of hands so limited, and shall open, view, and secure all tobacco brought to their warehouses, as soon as the same can reasonably be done, under penalty of 25s. for every neglect; and shall be respectively allowed in their accounts 151. annually, for each hand so limited, and by them employed above the number of two. The only difference between the duty imposed by this act, and that of 1805, is, that this requires the tobacco to be secured as soon as it can reasonably be done, and the latter requires it to be done regularly every night, which the law fixes as a reasonable time. The act of 1783, c. 10, edit. 1785, limited the number of hands to be employed by order of Court to two, without making any allowance for their labour. The act of 1792, c. 135, s. 16, before noticed, does not limit the number, *nor make any allowance. But under the provision contained in the act of 1766, c. 14, (although I entertain some doubts whether that act can be considered as in force) X think we may venture to pronounce that the allowance of 151. per annum ought to have been made for all above two, that were directed by -the Court to be employed by Graves & Goode, and as no more than two were directed to be employed by the other inspectors, I think the judgment of the General Court right in those cases. Whether the Legislature, on application to them, may think the law a hard one, and alter it,
must be submitted to them. But this Court, I conceive, can go no further than make the allowance I have mentioned; the allowance for two hands, being, as I understand the law, comprehended in the inspectors’ salaries. And in this opinion I am further confirmed by looking into the acts of 1730, c. 3, and 1732, c. 9, s. 10, which I had not till this morning an opportunity of consulting.
JUDGE ROANE.
By the original inspection act of 1730, (a) each inspector, (of whom the tenth section of the said act had provided that there should be three at each warehouse,) was entitled to receive from the public 601. per annum.
This salary, then a very considerable one, was declared to be as well in consideration of “necessary expenses as the trouble” of the inspectors. By the same act, sect. 36, the disbursements to be allowed to the inspectors, are restricted to those for “nails and printed notes and receipts;” which idea is also kept up in the 37th sect, stating that salaries and “other incidental charges herein before, mentioned” should, in any event, be paid out of the public treasury. This act also has no general clause on the subject of disbursements similar to the one now in question.
This act, by expressly limiting the salaries to be in consideration of “necessary expense” as well as trouble, is supposed to have varied from the general principles, that salaries are given merely in consideration of personal service, and that the expenses of public institutions, are (in addition) to be borne by the public. The correctness of this idea is farther manifested by the omission to insert in this act any general clause on the subject of disbursements, but, on the contrary, restricting them to certain specified items.
In the year 1732, (b) a legislative construction of the former act is given, which *217 ^entirely corresponds with the above idea. After stating, in the preamble of sect. 9, that the salaries of the inspectors were too high, and the services, as well as expenses of keeping servants, of the inspectors, were very unequal, at different warehouses, it goes on to apportion the several salaries of the inspectors, having especial reference to the degree of expense, as well as personal service, incidental to each warehouse.
Nearly all the salaries are also diminished by that act, and the number of inspectors is reduced to two.
This diminution and reduction, notwithstanding it increased upon the inspectors the expense of keeping hands, does not produce any change of the construction of the act of 1730; the material features of which, in relation to the subject just mentioned, still remained unaltered: but, on the contrary, this last act contained an express legislative decision that the expense of keeping servants appertained to the inspectors, and partly in consideration of which their salaries were settled: but for that expense, the salaries would, perhaps, not have been rated so high.
In the next act, which passed in 1748, some variations are found to have taken place, compared with the before mentioned act of 1730. In the first place, the salaries are directed, by sect. 36, p. 388, of edit, of 1752, to be paid “to the several inspectors appointed to attend and attending the several warehouses;” omitting to specify that they are given in consideration of expense as well as trouble: and, 2d. A general clause concerning disbursements is inserted, (sect. 55,) literally, as to the point in question, corresponding with the clause in the act of 1792 now before us. Indeed, these last two mentioned alterations have been since kept up in all the subsequent tobacco laws. This general clause concerning disbursements does not embrace the charge in question : 1st. Because by the 38th sect, of the same act the general fund is charged, as in the clause in the act of 1730 before stated, with “salaries, rents, and other incidental charges in this act mentioned;” thereby tying down the construction to the charges particularly specified in the act; and, 2d. Because, by the 56th sect, it is declared to be a breach of duty in the inspectors not to keep a sufficient number of hands at the several warehouses. The variation in the clause giving the salaries does not produce that effect; not only for the reasons just mentioned, but because the apportionment and the quantum of the salaries is supposed to be generally kept up as established by the act of 1730; and, since by that, *act a part of the compensation was in consideration of expense as well as trouble, if the inspectors were intended by the last act to be eased of the expense, it is supposed that their salaries would haye been proportionally reduced; or, rather, it is not supposed that they would have been thus, by a side wind, increased.
The act of 1764 is not different in the particulars now in question from the act of 1748 just mentioned; and the act of 1766(a) requires the Courts of certain Counties to limit and direct what number of hands shall be kept by the inspectors at certain enumerated warehouses, (of which this is not one,) with a proviso that such inspectors shall be allowed for all hands exceeding two at the rate of 151. per hand: that is, it leaves all the other warehouses on the general ground of duty and responsibility before stated, and subjects these specified warehouses to this new regulation.
The act of 1783, (b) fails to declare particularly, as was antecedently done, that it is a breach of duty for the inspectors to omit to keep the necessary number of hands; but declares that for any breaches of duty they are to be punishable and responsible. It also in section 15 declares that the inspectors shall constantly keep so many hands, not exceeding two, as the several Courts wherein, &c. shall, from time to time judge necessary; that is, it makes general the before mentioned provision, which the act of 1766 applied to particular warehouses; and, instead of the provision in the act of 1764 making it the duty of the justices to view and report (inter alia) upon this subject of keeping hands, subjects the breach of the duty imposed by the 15th section to the general penalty prescribed by the act.
It is supposed to have been beneficial for the inspectors to subject them to a prescribed and limited charge, imposed b3r the County Courts, whose respectability is undoubted, and who would generally consult the inspectors as to the number of hands necessary; rather than leave them, as before, subject to the posterior opinion of the justices, and the penalties thereupon attaching, as applying to each particular case. If the Courts could be suspected of the wantonness of unnecessarily invading the rights of the inspectors, that power would equally exist in the latter case as in the former.
Under the limited provision of the act of 1783, therefore, I see no reason to vary the construction of the act respecting *the charge in question. But, in 1792, the limitation on the County Courts in relation to the number of hands is done away, and the question is whether this circumstance varies the case. It is important moreover that that act eventually abridges and reduces the inspectors’ salaries; I mean in the event of the particular warehouse not yielding money enough to pay those salaries ; whereas, by the former laws, the whole salaries were, in all events, to be paid.
It is important too, that heavy penalties are added by the act of 1806; and it may be argued from the existence of those penalties that a construction should not prevail which, by making this expense chargeable to the inspectors, (liable too as they are to have their salaries eventually reduced as above mentioned,) would leave those penalties without any corresponding consideration.
As to the last source of diminution, I answer, that it is merely possible and eventual; and that the inspectors take their offices with a full knowledge of its existence : as to the first, the power of the Courts *218 is not enlarged on this subject, with reference to what it was originally. Formerly, the salaries of the inspectors were liable to be reduced by penalties for neglect of duty; and now, by a general preexisting ascertained charge. The limitation on the Courts, first partially created (but not so as to reach the warehouse in question) by the act of 1766, and which was made general by the act of 1783, has been abolished by the act of 1792; and the original ground, taken by the inspection acts, re-occupied ; with this only difference, (which, perhaps, is not injurious to the inspectors,) that, now, instead of being left subject to penalties, actions, and abatements of salary, applying to each particular breach of duty, that duty, or, rather, the expense which is equal to its discharge, is previously ascertained by a general regulation imposed by the respectable tribunal of the County Courts.
Note. — In this case a motion was made, at a subsequent day of the term, to permit the clerk to grant a certificate of the judgment of the Court before its adjournment, in order that it might be entered as the judgment of the General Court, which was then sitting: otherwise, an execution could not issue in behalf of the Commonwealth, until after the June term of the General Court: the law, which directs the clerk of the Court of Appeals to transmit copies of judgments and decrees, to the clerks of District Courts, and authorises executions thereon in vacation, not extending to the General Court. (See Rev. Code, vol. 1, c. 249, s. 6.) But the motion was denied. — Note in Original Edition.
The legislature had the same right to go back to the original ground taken by the inspection acts, and to vary its modifications, without essentially changing its principles, as they had to retain the restricted and limited system upon this point established by the acts of 1766 and 1783. That restriction and limitation is entirely done away by the act of 1792. We cannot relate back to and revive the partial provision on this subject, contained in the act of 1766, which is made general by the act of 1783; because the general words in the act of 1792 would ^equally sweep away the restrictions contained in the former act as in the latter.
I am, therefore, of opinion that the whole charge now before us ought to be paid by the inspectors, and that the judgment of the General Court is correct.
JUDGE FLEMING.
From the view already taken of the several acts of Assembly on the subject, prior to the year 1792, when the principal act now in force was passed, it may be perceived that the Legislature at different periods thought differently with respect to the duties of inspectors, and the number of hands to be by them employed at the several warehouses.
By the act of 1764, the Justices were to visit and superintend the respective warehouses, and, in general, to see that the inspectors did their duty; and, particularly, that they kept a sufficient number of hands for despatching the business.
By the act of 1766, the Courts of the several Counties in which the warehouses respectively lie, (as particularly enumerated in the act, and of which the County of Chesterfield is one) should, annually, in the month of September, or at the next succeeding Court, limit and direct what number of hands should be kept by the inspectors, and such inspectors were respectively to be allowed by the treasurer, in their accounts, the sum of 151. annually for each hand so limited and by them employed above the number of two; ■
By the act of 1783, the County Courts, in directing the number of hands to be kept and employed by the inspectors, were expressly restricted to the number of two at each warehouse; which virtually repealed the allowance for extra hands made by the act of 1766.
The Legislature, however, in 1792, finding by experience that two hands, at some of the greater warehouses, where large quantities of tobacco were received, were inadequate to perform the labour required, again gave the County Courts unrestricted power to direct the number of hands to be kept at each respective warehouse; but omitted to make an allowance for the extra hands so to be kept and employed, a& had been done in the act of 1766.
Under the equity of that act, however, a majority of the Court, supposing that the Legislature did not mean to impose an extraordinary additional expense on the inspectors, without some compensation for the same, think themselves authorised to make an allowance of 151. to *the apel-lants Graves & Goode, for each of the two extra hands, directed to be kept and employed at their warehouse; and, though that sum may be inadequate to the hire of able hands at the present day, yet, that being the allowance fixed by the act of 1766, the Court thinks it cannot go beyond that sum; but, upon a fair and respectful representation of the hardship to the Legislature, redress may perhaps be obtained.
The judgment is to be reversed, and ant allowance of one hundred dollars to be made to the appellants in their account for two extra hands by them employed at the said warehouse for the year 1806.

 See Rev. Code, vol. 2, c. 73, p. 101, s. 3.

 lb. vol. 1. c. 135.

 See Laws of Virginia, edit. 1733, p. 430, sect. 36. (1)
(1) The inspection of tobacco, in Virginia, is of very ancient date, and was an object on which the legislature very early and unceasingly bestowed their attention. By the 26th act of February, 1631, 2, it was ordained, that if any merchant or other person should be dissatisfied with the quality of tobacco tendered to him in payment, he might apply to the commander of the place, whose duty it should be, either verbally or by warrant under his hand, to appoint two sufficient men to view the tobacco, and declare to him. on oath, the quality; and if it was found unmerchantable, to cause it to be burnt. The same provision is found in the 21st act of September, 1632.
At the session of February, 1632,3, five warehouses were established, (see act 1st,) and all payments were directed to be made there. The planters were compelled to carry their tobacco to the warehouses before the last day of December in every year; and no tobacco could be paid away till examined and passed by sworn inspectors. The member of the council whose residence was nearest to any warehouse, was an inspector of course, and must necessarily be one of the number. He had a right to call to his assistance any of the commissioners of plantations, and they were to attend once a week, or oftener, if necessary, for the purpose of viewing the tobacco brought to the warehouses.
At the August session, 1633. (act 1st,) seven warehouses were established, and the above law underwent several amendments; but the provisions concerning the inspection, remained the same, in substance. In the infancy of our inspection laws, no fees appear to have been allowed. — Note in Original Edition.

b) See L. V. edit. 1733, p. 479, sect. 10.

 JL. V. edit. 1769, c. 14, sect. 16, p. 473.

Ob) Clian. Revlsal, or edit, of 1785, p. 196,197, sect 38.